IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARTUSO PASTRY FOODS CORP., individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br>    v.<br><br>PACKAGING CORPORATION OF AMERICA, INTERNATIONAL PAPER COMPANY, SMURFIT KAPPA NORTH AMERICA LLC, WESTROCK CP, LLC, GEORGIA PACIFIC LLC, CASCADES INC., CASCADES USA INC., CASCADES HOLDING US, INC., PRATT INDUSTRIES, INC., and GREIF INC.,<br><br>                Defendants. | Case No. 1:25-cv-08856<br><br>Honorable Mary M. Rowland<br><br>Magistrate Judge Keri L. Holleb Hotaling |

**DEFENDANT PRATT INDUSTRIES, INC.'S**
**MEMORANDUM OF LAW IN SUPPORT**
**OF ITS INDIVIDUAL MOTION TO DISMISS**

Defendant Pratt Industries, Inc. ("Pratt")[1] joins Defendants' Joint Motion to Dismiss ("Joint Motion") because, for each of the reasons stated therein, the Complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6).[2] Pratt submits this short standalone motion to emphasize how the Complaint's defects are particularly glaring as they relate to Pratt. The Complaint mentions Pratt in only 11 of its 163 paragraphs and does not allege that Pratt

---

[1] Pratt Industries, Inc. does not concede through this motion that it is the legal entity that engaged in any of the purported anticompetitive conduct alleged in the Complaint and reserves all rights and defenses in this regard.

[2] Unless otherwise stated, all capitalized terms have the same meanings attributed to them in the Complaint.

participated in the majority of the alleged price increases or took any other action in furtherance of the conspiracy.³ *See* Compl. ¶¶ 54–61.

Most importantly, Plaintiff pleads **no** factual allegations whatsoever that Pratt reduced its output of Containerboard Products during the relevant period. *See id*. ¶¶ 62–75. That alone makes it impossible to plausibly infer that a price-fixing conspiracy existed, or that Pratt participated in any such conspiracy, because "all serious attempts to establish a supracompetitive price must necessarily include an agreement to restrict output." *Westinghouse Elec. Corp.* v. *Gulf Oil Corp.*, 588 F.2d 221, 226 (7th Cir. 1978). Indeed, "[a]n agreement to fix prices is not separate or separable from a mutual understanding to reduce output. This is for the simple reason that an effort to raise prices cannot succeed without a corresponding reduction in supply." *Kleen Prods. LLC* v. *Int'l Paper*, 276 F. Supp. 3d 811, 827 (N.D. Ill. 2017), *aff'd sub nom. Kleen Prods. LLC* v. *Georgia-Pac. LLC*, 910 F.3d 927 (7th Cir. 2018). Plaintiff therefore does not adequately state a price-fixing conspiracy claim against Pratt because the Complaint fails to allege facts that make it plausible to infer that Pratt reduced output, let alone that it did so pursuant to an anticompetitive agreement.

Plaintiff appears to understand that it must allege an agreement among Defendants to reduce output in order to state a plausible price-fixing claim because Plaintiff's core liability theory—set forth right at the start of its Complaint—relies on the allegation that Defendants "adopted a 'value over volume' strategy" by "reducing output" of Containerboard Products while

---

3    Plaintiff alleges that Pratt participated in just three of the seven allegedly coordinated price increases. Plaintiff alleges that Pratt took part in the first alleged price increase announced on September 25, 2020, and implemented in November 2020—when demand for containerboard packaging was surging due to the COVID-19 pandemic and North American prices for raw material such as fiber had started to spike, as shown by the Complaint's own figures. *See* Compl. ¶¶ 54–55, 84–85 at figs. 8, 9 & 10; *see also* Joint Motion at 3–8. According to the Complaint, Pratt then skipped the next two price increases and waited three years, until December 2023, to raise prices again. *See* Compl. ¶¶ 56–59; *see also* Joint Motion at 3–6. Plaintiff then alleges that Pratt joined the alleged price increase implemented in June 2024, only to skip the final price increase allegedly implemented a few months later in January 2025. *See* Compl. ¶¶ 60–61.

2

carrying out the alleged price increases. Compl. ¶ 2. But the Complaint does not allege that Pratt announced or implemented a "value over volume" strategy, or restricted its output in any way (such as by reducing operations or closing facilities), and does not allege any facts that would make such inferences plausible. *See id.* ¶¶ 62–75.

Why did Plaintiff omit such critical allegations against Pratt? Because Plaintiff knows (or should have known) that the opposite is true: Pratt *increased* its output of Containerboard Products during the relevant time period by opening a brand-new paper mill and four new corrugating and manufacturing plants between 2022 and 2024. This information is publicly available on Pratt's website, which Plaintiff incorporated by reference into its Complaint and the Court can consider when deciding this motion.[4]

That information shows that Pratt consistently has expanded its production capacity since 2020 through billions of dollars of investment and substantially increased its output of Containerboard Products during the relevant time period. More specifically, Pratt opened a brand-new 1.1 million square foot, $700 million paper mill and corrugator plant in September 2023 in Henderson, Kentucky—Pratt's sixth paper mill—which has increased Pratt's production capacity and output of Containerboard Products by approximately *1,500 tons per day* (550,000 tons annually).[5] In addition, Pratt opened four new manufacturing and converting plants (the facilities

---

[4] Plaintiff incorporated Pratt's website by reference into the Complaint by directly quoting from the website in Paragraph 27, which alleges that Pratt "describes itself as the 'fifth largest corrugated packaging company in the US,'" and includes figures from Pratt's website regarding its "21 corrugating plants and 26 converting plants." Compl. ¶ 27; *see also Fortres Grand Corp.* v. *Warner Bros. Ent. Inc.*, 947 F. Supp. 2d 922, 925 (N.D. Ind. 2013), *aff'd*, 763 F.3d 696 (7th Cir. 2014) (determining that two websites referenced in the complaint were incorporated by reference since they were "central to the complaint and are referred to in it").

[5] *E.g.*, Pratt Industries, *Committed to Growth*, available at https://www.prattindustries.com/committed-to-growth/; *see also* Pratt Industries, *Pratt Industries Opens Sixth 100% Recycled Paper Mill and State-of-the-Art Box Plant* (Sept. 14, 2023), available at https://www.prattindustries.com/latest-news/growth/pratt-industries-opens-sixth-100-recycled-paper-mill-and-state-of-the-art-box-plant/.

3

that create finished containerboard and packaging products from linerboard and corrugating medium) in Georgia, Kansas, and Texas between 2022 and 2024, spanning over 2.5 million square feet of production space and reflecting over $500 million in investment.[6]

Pratt's increased output during the relevant time period is not only inconsistent with Plaintiff's theory of the purported conspiracy as to both Pratt and all Defendants; it is incompatible with the purported conspiracy. As other courts have recognized, it would make no economic sense for Pratt to agree with Defendants to fix prices while Pratt simultaneously engaged in a significant expansion of output—an action directly contrary to the purpose of the purported conspiracy. *See Kleen Prods. LLC* v. *Georgia-Pac. LLC*, 910 F.3d 927, 938 (7th Cir. 2018) (affirming that Georgia-Pacific was not liable under Section 1 of the Sherman Act because its "supply behavior [did] not point towards its having a role in any conspiracy," because it had "purchased a new mill" during the relevant time period, which "allowed it to *increase* its production capacity over the class period" (emphasis in original)); *see also City of Moundridge* v. *Exxon Mobil Corp.*, 2009 WL 5385975, at *7 (D.D.C. Sept. 30, 2009), *aff'd.*, 409 F. App'x 362, 363 (D.C. Cir. 2011) (determining that evidence that two of the four alleged co-conspirators increased annual production while the other two alleged co-conspirators decreased annual production indicated no conspiracy because "[i]t would be contrary to [the decreasing parties'] economic interests to participate in a conspiracy where one conspirator could increase production and market share at the expense of other co-conspirators"); *Washington Cty. Health Care Auth., Inc.* v. *Baxter Int'l Inc.*, 2020 WL 1666454, at *7 (N.D. Ill. Apr. 3, 2020) (dismissing a conspiracy claim against Baxter because "the plaintiffs have not sufficiently alleged *any* output restricting action by Baxter. That won't do." (emphasis in original)).

---

[6] *See, e.g.*, Pratt Industries, *Committed to Growth*, available at https://www.prattindustries.com/committed-to-growth/.

Because the Complaint does not (and cannot) allege that Pratt acted in a manner consistent with Plaintiff's theory of the purported conspiracy by reducing its output during the relevant time period, the Complaint does not plausibly allege that Pratt participated in the purported conspiracy. *See Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 564–65 (2007) (a complaint alleging a price-fixing claim must be dismissed if the claim is not "plausible" "when viewed in light of common economic experience"); *see also Cascades Comp. Innovation LLC* v. *RPX Corp.*, 2013 WL 316023, at *11 (N.D. Cal. Jan. 24, 2013) ("Where the facts alleged in the complaint demonstrate that an alleged conspiracy makes no economic sense, the claim must be dismissed."). And, in light of publicly available information about the expansion of Pratt's output of Containerboard Products on a website quoted in Plaintiff's Complaint, it is clear that this is a pleading deficiency that Plaintiff cannot cure in good faith through amendment or buttress with discovery. For these reasons, in addition to those stated in the Joint Motion, the Court should dismiss the claims against Pratt with prejudice pursuant to Rule 12(b)(6).

Dated: October 20, 2025            Respectfully submitted,

                                         **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By:     /s/ *William B. Michael*
         William B. Michael

William B. Michael (*pro hac vice*)
Geoffrey R. Chepiga (*pro hac vice*)
Brette Tannenbaum (*pro hac vice*)
Justin D. Lerer (*pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019-6064
Phone: (212) 373-3000
Fax: (212) 757-3990
wmichael@paulweiss.com
gchepiga@paulweiss.com
btannenbaum@paulweiss.com
jlerer@paulweiss.com

*Counsel for Defendant Pratt Industries, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Corporate Disclosure Statement was filed on October 20, 2025 with the Clerk of the Court using the CM/ECF system, which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.

By: /s/ *William B. Michael*
William B. Michael

*Counsel for Defendant Pratt Industries, Inc.*