**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ARTUSO PASTRY FOODS CORP., individually and on behalf of all others similarly situated, | No. 1:25-cv-08856 |
| Plaintiff, | Hon. Mary M. Rowland |
| | Hon. Keri L. Holleb Hotaling |
| v. | |
| PACKAGING CORPORATION OF AMERICA, INTERNATIONAL PAPER COMPANY, SMURFIT KAPPA NORTH AMERICA LLC, WESTROCK CP, LLC, GEORGIA-PACIFIC LLC, CASCADES INC., CASCADES USA INC., CASCADES HOLDING US, INC., PRATT INDUSTRIES, INC., AND GREIF INC., | |
| Defendants. | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................. 1

I.      DEFENDANTS APPLY THE CORRECT LEGAL STANDARD................................. 1

II.     PLAINTIFF'S ALLEGATIONS UNDERMINE THE PLAUSIBILITY OF A
        CONSPIRACY. ................................................................................................ 2

        A.      Most Defendants Maintained Or Increased Capacity. ........................... 2

        B.      Defendants Did Not Announce Price Changes In Parallel. .................... 4

        C.      Plaintiff Pleads Obvious Alternative Explanations For Price Increases. ............... 6

III.    PLAINTIFF'S ALLEGATIONS, WHEN VIEWED HOLISTICALLY,
        REFLECT LAWFUL INTERDEPENDENCE................................................................ 8

IV.     PLAINTIFF'S PAINT-BY-NUMBERS PLUS FACTORS DO NOT MAKE ITS
        CLAIM PLAUSIBLE. ........................................................................................ 11

V.      THE OPPOSITION CONFIRMS THAT CLAIMS ON SALES BEFORE JULY
        29, 2021 ARE UNTIMELY................................................................................ 14

VI.     REPLEADING WOULD BE FUTILE........................................................................ 15

CONCLUSION............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amory Invs. LLC v. Utrecht Am. Holdings, Inc.*,
  74 F.4th 525 (7th Cir. 2023) ...................................................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................2

*In re Broiler Chicken Antitrust Litig.*,
  290 F. Supp. 3d 772 (N.D. Ill. 2017) .......................................5

*Brown v. JBS USA Food Co.*,
  773 F. Supp. 3d 1193 (D. Colo. 2025)....................................15

*In re Concrete & Cement Additives Antitrust Litig.*,
  2025 WL 1755193 (S.D.N.Y. June 25, 2025) ...........................4

*In re Copper Antitrust Litig.*,
  436 F.3d 782 (7th Cir. 2006) ................................................15

*Corzo v. Brown Univ.*,
  2026 WL 91424 (N.D. Ill. Jan. 12, 2026) .................................5

*D'Augusta v. Am. Petroleum Inst.*,
  117 F.4th 1094 (9th Cir. 2024) ..............................................4

*In re Deere & Co. Repair Serv. Antitrust Litig.*,
  703 F. Supp. 3d 862 (N.D. Ill. 2023) .....................................11

*In re Disposable Contact Lens Antitrust*,
  215 F. Supp. 3d 1272 (M.D. Fla. 2016)..................................11

*In re Eur. Gov't Bonds Antitrust Litig.*,
  2020 WL 4273811 (S.D.N.Y. July 23, 2020) ............................6

*In re Fla. Cement & Concrete Antitrust Litig.*,
  746 F. Supp. 2d 1291 (S.D. Fla. 2010) ....................................2

*Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*,
  85 F. Supp. 3d 1007 (E.D. Wis. 2015)....................................15

*In re Fragrance Direct Purchaser Antitrust Litig.*,
  2025 WL 579639 (D.N.J. Feb. 21, 2025) ..................................5

## TABLE OF AUTHORITIES
(continued)

**Page**

*In re Generic Pharms. Pricing Antitrust Litig.*,
    338 F. Supp. 3d 404 (E.D. Pa. 2018) ...................................................................11

*Hansen v. Nw. Univ.*,
    2025 WL 2731378 (N.D. Ill. Sept. 24, 2025) ....................................................5, 11

*James Cape & Sons Co. v. PCC Constr. Co.*,
    453 F.3d 396 (7th Cir. 2006) ...............................................................................15

*Jien v. Perdue Farms, Inc.*,
    2020 WL 5544183 (D. Md. Sept. 16, 2020) ..........................................................6

*Kleen Prods. LLC v. Ga.-Pac. LLC*,
    910 F.3d 927 (7th Cir. 2018) ....................................................................4, 8, 9, 14

*Kleen Prods. LLC v. Int'l Paper*,
    276 F. Supp. 3d 811 (N.D. Ill. 2017) .....................................................................3

*Kleen Prods., LLC v. PCA*,
    775 F. Supp. 2d 1071 (N.D. Ill. 2011) ...................................................7, 9, 10, 13

*In re Linerboard Antitrust Litig.*,
    321 F. Supp. 2d 619 (E.D. Pa. 2004) ...................................................................14

*In re Loc. TV Advert. Antitrust Litig.*,
    2020 WL 6557665 (N.D. Ill. Nov. 6, 2020) ........................................................13

*Appvion, Inc. Ret. Savings & Emp. Stock Ownership Plan ex rel. Lyon v. Buth*,
    99 F.4th 928 (7th Cir. 2024) ...............................................................................15

*In re Manufactured Home Lot Rents Antitrust Litig.*,
    2025 WL 3485693 (N.D. Ill. Dec. 4, 2025) ................................................. *passim*

*Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*,
    29 F.4th 337 (7th Cir. 2022) ...............................................................................11

*In re Musical Instruments & Equip. Antitrust Litig.*,
    798 F.3d 1186 (9th Cir. 2015) .............................................................................13

*In re Passenger Vehicle Replacement Tires Antitrust Litig.*,
    767 F. Supp. 3d 681 (N.D. Ohio 2025)......................................................6, 7, 8, 12

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
    764 F. Supp. 2d 991 (N.D. Ill. 2011) .....................................................................1

**TABLE OF AUTHORITIES**

(continued)

**Page**

*Polley v. Nw. Univ.*,
    560 F. Supp. 3d 1197 (N.D. Ill. 2021) ...................................................................6

*In re Polyurethane Foam Antitrust Litig.*,
    152 F. Supp. 3d 968 (N.D. Ohio 2015) ..................................................................5

*In re Pork Antitrust Litig.*,
    495 F. Supp. 3d 753 (D. Minn. 2020) ...................................................................15

*Prosterman v. Am. Airlines, Inc.*,
    747 F. App'x 458 (9th Cir. 2018) ............................................................................2

*Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*,
    917 F.3d 1249 (11th Cir. 2019) ...............................................................................2

*Right Field Rooftops, LLC v. Chi. Baseball Holdings, LLC*,
    2016 WL 4549087 (N.D. Ill. Sept. 1, 2016) .........................................................15

*Ross v. Am. Express Co.*,
    35 F. Supp. 3d 407 (S.D.N.Y. 2014) ...............................................................13, 14

*Siva v. Am. Bd. of Radiology*,
    38 F.4th 569 (7th Cir. 2022) ....................................................................................1

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    580 F. Supp. 2d 896 (N.D. Cal. 2008) ..................................................................14

*Sunny Handicraft Ltd. v. Envision This!, LLC*,
    2015 WL 231108 (N.D. Ill. Jan. 16, 2015) .............................................................8

*In re Text Messaging Antitrust Litig.*,
    782 F.3d 867 (7th Cir. 2015) ..................................................................................11

*In re Text Messaging Antitrust Litig.*,
    2009 WL 5066652 (N.D. Ill. Dec. 10, 2009) ....................................................5, 12

*In re Travel Agent Comm'n Antitrust Litig.*,
    583 F.3d 896 (6th Cir. 2009) ..................................................................................13

*In re Turkey Antitrust Litig.*,
    642 F. Supp. 3d 711 (N.D. Ill. 2022) ................................................................5, 12

*Wash. Cnty. Health Care Auth., Inc. v. Baxter Int'l Inc.*,
    328 F. Supp. 3d 824 (N.D. Ill. 2018) .............................................................2, 4, 11

## TABLE OF AUTHORITIES
(continued)

**Page**

**Statutes and Rules**

15 U.S.C. § 15b ................................................................................................................14

Fed. R. Civ. P. 9(b) .....................................................................................................14, 15

## INTRODUCTION

Plaintiff implores the Court to view the allegations "as a whole," not piecemeal. Opp. 11.[1]

Defendants agree, as a holistic review shows that Plaintiff fails to allege a plausible conspiracy:

- The well-pleaded facts show Defendants *competing*, not conspiring. Most Defendants are *never* alleged to have reduced capacity (let alone output), several *increased* it, and half sat out multiple rounds of alleged price-increase announcements. These allegations preclude Plaintiff from alleging parallel conduct and undermine the plausibility of any conspiracy.

- The complaint establishes obvious alternative explanations for the challenged conduct. The spikes in input costs and increased demand alleged in the complaint undercut any inference that rising prices resulted from an agreement because prices often increase in response to higher costs and higher demand.

- The complaint's market-structure allegations—concentration, inelastic demand, elevated utilization, and high demand—establish that unilateral, successive price increases would make economic sense, and the law is clear that such interdependent conduct is legal.

- The alleged plus factors fail to suggest a conspiracy, as required by law, because they focus on innocuous features of the industry that would exist without a conspiracy.

Taken together, Plaintiff's allegations do not raise a plausible inference of agreement. Dismissal "to avoid 'the potentially enormous expense of antitrust discovery'" is therefore required. *Siva v. Am. Bd. of Radiology*, 38 F.4th 569, 575 (7th Cir. 2022) (brackets omitted).

## ARGUMENT

## I. Defendants Apply The Correct Legal Standard.

To survive a motion to dismiss, Plaintiff must allege a *plausible* price-fixing conspiracy, taking into consideration innocuous explanations for the conduct alleged. *See In re Manufactured Home Lot Rents Antitrust Litig.*, 2025 WL 3485693, at *13 (N.D. Ill. Dec. 4, 2025) ("alternative explanations can serve to demonstrate that Plaintiffs' conspiracy claims are not plausible"); *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 764 F. Supp. 2d 991, 1002 (N.D. Ill. 2011)

---

[1] Unless otherwise specified, capitalized terms have the meanings set forth in the Memorandum in Support of Defendants' Motion to Dismiss (the "Memorandum" or "Mem."), ECF No. 118. The "Opposition" or "Opp." means Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss, ECF No. 129.

(claims must be "plausible in light of the competing explanations"). Where a complaint affirmatively alleges reasons why the alleged conspiracy is implausible, courts do not hesitate to dismiss it. *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564-69 (2007); *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1272 (11th Cir. 2019) (en banc); *Prosterman v. Am. Airlines, Inc.*, 747 F. App'x 458, 461-62 (9th Cir. 2018) (mem.); *In re Fla. Cement & Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291, 1310-11 (S.D. Fla. 2010).

Application of this standard does not implicate "summary judgment considerations." Opp. at 23. Defendants do not ask the Court to weigh competing explanations or resolve factual disputes. Rather, Defendants directed the Court to the complaint, which pleads facts—including variation among Defendants, rising input costs, pandemic-driven demand changes, and market characteristics conducive to interdependent behavior—that explain Defendants' conduct without any agreement. When a plaintiff's own allegations establish that a conspiracy is economically unnecessary to explain the challenged conduct, the conspiracy theory is not plausible. *See Wash. Cnty. Health Care Auth., Inc. v. Baxter Int'l Inc.*, 328 F. Supp. 3d 824, 832 (N.D. Ill. 2018) (conspiracy implausible where "context suggests that . . . agreement is unlikely, *or unnecessary*" (emphasis added)). This conclusion requires no weighing of evidence or credibility determinations; it requires only that the Court read the complaint and credit the pleaded facts that explain the conduct Plaintiff asks the Court to attribute to collusion.

## II.    Plaintiff's Allegations Undermine The Plausibility Of A Conspiracy.

The complaint is rife with legitimate explanations for Defendants' conduct and allegations that are affirmatively inconsistent with a conspiracy. The complaint should be dismissed.

### A.    Most Defendants Maintained Or Increased Capacity.

To begin, *most* Defendants are *never* alleged to have reduced capacity to produce Containerboard Products, let alone output. *See* Mem. 13-14 & tbl. 4. That matters because, as

Plaintiff admits, "pricing and output are inherently linked: when prices rise, demand falls, and supply correspondingly decreases." Opp. 20 n.9. In this Court's words, "an effort to raise prices cannot succeed without a corresponding reduction in supply." *Kleen Prods. LLC v. Int'l Paper*, 276 F. Supp. 3d 811, 827 (N.D. Ill. 2017), *aff'd*, 910 F.3d 927 (7th Cir. 2018). Plaintiff also admits that fewer than half of the Defendants are alleged to have reduced capacity during the putative class period,[2] Opp. 20, which means most Defendants either maintained or increased their capacity, undermining any effort to raise prices. *See, e.g.*, ECF No. 123, at 3-4 (discussing PCA's expansion); ECF No. 121, at 2-4 (same for Pratt). These admissions are critical, because they reveal that more than half of Defendants engaged in conduct that was expressly contrary to the goal of the alleged conspiracy. It is irrational to infer a conspiracy from such facts.

Ignoring this illogic, Plaintiff argues that the handful of capacity restrictions alleged in the complaint are sufficient to plead a plausible conspiracy because "output cuts are economically irrational in a competitive market, particularly during periods of strong demand." Opp. 20. But Plaintiff's own allegations demonstrate that these alleged output restrictions began only after demand started to *drop*: both Figure 10 and Figure 13 of the complaint show demand increasing from 2019 to 2021, followed by significant declines in demand and capacity utilization during the 2022-2024 period.[3] The complaint does not allege a single output restriction prior to October 6, 2022. *See* Compl. ¶¶ 62-68. Therefore, Plaintiff did not plead that the alleged output restrictions occurred during a period of "strong demand." *Contra* Opp. 20. Instead, the complaint alleges only that three Defendants reduced capacity as demand was falling—a logical business response not

---

[2] Notably, even some of the alleged plant closures Plaintiff identifies in the complaint are irrelevant because they do not relate to Containerboard Products. *See* Mem. tbl. 4.

[3] Plaintiff's figures do not contain data for 2025.

indicative of conspiracy. *See D'Augusta v. Am. Petroleum Inst.*, 117 F.4th 1094, 1104-05 (9th Cir. 2024). Far from supporting a plausible conspiracy, Plaintiff's output allegations refute one.[4]

> **B.      Defendants Did Not Announce Price Changes In Parallel.**

Plaintiff's allegations about pricing are also inconsistent with agreement. As Defendants' opening brief explains, *see* Mem. 12-13, the complaint does not identify a *single* occasion when all Defendants announced price increases around the same time. Rather, it illustrates that numerous Defendants did not join multiple rounds of alleged price-increase announcements, with some going *years* between increases. *See* Mem. tbls. 1-2. When "a company increases prices for a product and its competitor does not," then "those companies have not engaged in parallel conduct." *In re Concrete & Cement Additives Antitrust Litig.*, 2025 WL 1755193, at *14 (S.D.N.Y. June 25, 2025).

This absence of parallel pricing is inconsistent with agreement because no conspirator would sit back and allow rivals to reap the benefits of price hikes without doing so itself, as Plaintiff recognizes. *See* Opp. 26-27. For example, it belies logic to think that Greif and International Paper agreed to fix prices when, according to Plaintiff's own figures, their announced price increases differed by almost 200%. *See* Mem. tbl. 3. Nor would Defendants, after supposedly agreeing to coordinate price hikes, have then done nothing during "a two-year lull in major price increases" between 2022 and 2023, as the complaint alleges. Compl. ¶ 59. After all, as this Court observed, it "is hardly plausible to infer that, having supposedly agreed" to raise prices, Defendants "then sat on their hands for" two years without doing so. *Wash. Cnty.*, 328 F. Supp. 3d at 836.

True, price changes need not "reflect perfect correspondence across all participants." Opp. 15. But the stark differences across Defendants do not make economic sense, indicating that this

---

[4] Plaintiff also argues that *Kleen* took mill closures as evidence of conspiracy. Opp. 23-24. But *Kleen* should not be read to mean that closures suggest a conspiracy in and of themselves. There, the court discussed WestRock's mill closures in conjunction with what it viewed as conspiratorial statements by WestRock employees. *See Kleen*, 910 F.3d at 940-41. Similar allegations are wholly absent here.

conduct was not "substantial[ly] similar[]," as Plaintiff's own authority requires. *In re Polyurethane Foam Antitrust Litig.*, 152 F. Supp. 3d 968, 983 (N.D. Ohio 2015); *see also In re Fragrance Direct Purchaser Antitrust Litig.*, 2025 WL 579639, at *8 (D.N.J. Feb. 21, 2025).[5] Additionally, despite arguing in Opposition that summary-judgment decisions are inapplicable at the motion-to-dismiss stage, Plaintiff cites one as supplemental authority. *See* ECF No. 133. It is even further afield than the cases cited in the Opposition. In that decision, the existence of an agreement was never in doubt because all the defendants had admittedly "collaborated on common financial aid practices" as part of an organization called "the 568 Group." *Corzo v. Brown Univ.*, 2026 WL 91424, at *5 (N.D. Ill. Jan. 12, 2026). As such, the court had no occasion to (and did not) discuss parallel conduct at all. Nor did the court suggest a basis to infer an agreement when, as here, all the facts Plaintiff alleged are fully consistent with unilateral conduct.

The Opposition's other parallel-pricing arguments fare no better. *First*, Plaintiff's speculation that Defendants changed prices in different amounts at different times to conceal their behavior simply acknowledges their inability to allege parallel conduct—a critical part of any circumstantial conspiracy case. *See Hansen v. Nw. Univ.*, 2025 WL 2731378, at *8 (N.D. Ill. Sept. 24, 2025) ("Circumstantial evidence requires allegations of 'parallel conduct . . . placed in a context that raises a suggestion of a preceding agreement.'"). It also refutes the Opposition's characterization of the alleged price increases as "lockstep" or "identical." *Contra* Opp. 11-12, 15-16. *Second*, Plaintiff admits that aggregate data (here, from the Federal Reserve) must be "*paired with specific factual allegations*" about each Defendant's contribution to the trend. Opp. 14-15.

---

[5] Plaintiff's other cases are also distinguishable. *See, e.g.*, *In re Turkey Antitrust Litig.*, 642 F. Supp. 3d 711, 723 (N.D. Ill. 2022) ("eight of the ten Defendants allegedly participated" in each round of production cuts); *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 792 (N.D. Ill. 2017) ("all of the defendants engaged in production cuts at the same time"); *In re Text Messaging Antitrust Litig.*, 2009 WL 5066652, at *5 (N.D. Ill. Dec. 10, 2009) (treating successive price increases by all four defendants as parallel).

The specifics, however, reveal wide divergence between Defendants.[6] *See* Mem. tbls. 1-3. *Third*, Plaintiff argues that Smurfit Kappa—which never announced increased prices—might have raised prices because it is affiliated with Smurfit Westrock. *See* Opp. 19. Smurfit Westrock did not exist until 2024, however, long after the alleged conspiracy began. *See* Compl. ¶ 19. In any event, their purported "'corporate affiliation does not alter the pleading requirement' to separately identify each defendant's involvement in the [alleged] conspiracy." *Jien v. Perdue Farms, Inc.*, 2020 WL 5544183, at *4 (D. Md. Sept. 16, 2020) (brackets omitted).

### C. Plaintiff Pleads Obvious Alternative Explanations For Price Increases.

Even if Defendants' conduct could somehow be described as parallel, parallel conduct is lawful, and obvious explanations—including rising input costs and increased demand associated with COVID-19—undercut any inference of conspiracy. *See* Mem. 18-21. The complaint establishes that input costs spiked in 2020-21 during a COVID demand boom, receded in 2022, and rose again in 2023-24. *See* Compl. ¶¶ 85-86 & figs. 8-10. So, too, do the earnings calls and reports on which the complaint relies.[7] *See* Mem. 19 (describing Plaintiff's cherry-picking of quotes from documents that, when read as a whole, reveal that Defendants faced "high cost

---

[6] Regardless, the sort of price increases alleged here could occur in any market. That is a far cry from Plaintiff's authority, which involved "distinctive" market trends that would "not happen in a competitive market." *In re Eur. Gov't Bonds Antitrust Litig.*, 2020 WL 4273811, at *16 (S.D.N.Y. July 23, 2020).

[7] Although Plaintiff urges the Court to disregard these documents, it concedes their authenticity, and all of them are "central" to the claim. *Contra* Opp. 34-35. The earnings calls (cited at Compl. ¶¶ 70, 72-73) and an Annual Report (cited at Compl. ¶ 71) on which Plaintiff bases allegations about "value over volume" strategies appear in the Complaint as evidence of the alleged conspiracy. *See In re Passenger Vehicle Replacement Tires Antitrust Litig.*, 767 F. Supp. 3d 681, 694 (N.D. Ohio 2025) (materials quoted in pleadings "as circumstantial evidence of the alleged conspiracy" were "incorporated by reference in the pleadings"). SEC filings (cited at Compl. ¶¶ 87-88) purportedly evincing inflated prices actually reveal that elevated input costs were at fault and thus can be considered to "rebut[] plaintiffs' assertion that the price increases are not explained by the inflationary impacts of the COVID-19 pandemic and other such market forces." *Id.* at 695. The doctrine of incorporation by reference accordingly forecloses Plaintiff's strategy of "artful pleading" "by failing to attach relevant documents." *Polley v. Nw. Univ.*, 560 F. Supp. 3d 1197, 1204 (N.D. Ill. 2021); *see also* PCA's Reply at 2-3 (discussing judicial notice).

environments"). The alleged price-increase announcements follow the same pattern, with price increases during periods of rising input costs in 2020-21 and 2023-24, and a lull in price-increase announcements when demand fell around 2022. *See* Mem. tbls. 1-2. Plaintiff quibbles over whether these factors *fully* explain the alleged price increases, Opp. 25, but does not dispute that increases occurred when costs were elevated, demand for Containerboard Products was on the rise, or both. *See In re Passenger Vehicle Replacement Tires Antitrust Litig.*, 767 F. Supp. 3d 681, 738 (N.D. Ohio 2025) (argument that "rising [input] costs may not have been the full or even real reason for increasing prices" did not suggest conspiracy).

Plaintiff is wrong that this problem with its complaint can be ignored "at the pleading stage" or require the Court to "weigh competing explanations." Opp. 24, 29. Obvious explanations drawn from the complaint are not competing facts to be weighed at summary judgment: they are part of the plausibility analysis at the pleading stage. If prices were not expected to rise because demand or costs were "declining," *Kleen Prods., LLC v. PCA*, 775 F. Supp. 2d 1071, 1079 (N.D. Ill. 2011), then parallel price increases might (alongside other factors) raise suspicions. However, that is not what happened in this case. Plaintiff pleads the market conditions—high concentration (Compl. ¶¶ 46-47, 97-111), inelastic demand (*id.* ¶¶ 139-41), elevated capacity utilization (*id.* ¶ 89 & fig. 13), and pandemic-driven demand and input cost hikes (*id.* ¶¶ 82-87 & figs. 8-10)—that would make such pricing decisions independently rational. Price increases "do little to suggest prior agreement" when demand, costs, or both are on the rise, especially when, as here, Defendants "were reacting in real-time to an unprecedented global pandemic." *Tires*, 767 F. Supp. 3d at 732.

Plaintiff's failure "to meaningfully address the 'obvious alternative explanation[s]' for the [alleged price] increases" confirms that the increases are, at most, "merely consistent with" and not "suggestive of" a conspiracy. *Manufactured Homes*, 2025 WL 3485693, at *13; *see also Tires*,

767 F. Supp. 3d at 727 (same). In *In Manufactured Homes*, 2025 WL 3485693, at *13, for example, the plaintiffs sought to infer a conspiracy from a series of "rent increases." The complaint, however, revealed that "demand for manufactured home rentals increased while supply decreased or remained stagnant, resulting in record low vacancy rates" during the relevant time. *Id.* On those facts, the alleged rent increases were "just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market" and thus helped "to demonstrate that Plaintiffs' conspiracy claims are not plausible." *Id.* So too here.

## III. Plaintiff's Allegations, When Viewed Holistically, Reflect Lawful Interdependence.

The allegations in this case establish nothing more than lawful, interdependent behavior. *See* Mem. 16-18. Plaintiff's own briefing acknowledges that pricing decisions in concentrated markets can be explained by "firms *independently* observing and mimicking each other's pricing decisions." Opp. 22 (emphasis added); *see also* Compl. ¶ 96 (parallel pricing can result from "barometric price leadership," rather than collusion). Even so, Plaintiff insists the Court should disregard Seventh Circuit case law (*Kleen*) crediting such pricing in the containerboard industry as lawful, independent conduct until summary judgment. *See* Opp. 22-23. Although *Kleen* is a summary-judgment decision, it still demonstrates why dismissal is warranted, for three reasons.

*First*, the *Kleen* court's articulation of the governing antitrust principle is exactly on point: parallel pricing in the containerboard industry can be explained by legal, interdependent conduct, and not conspiracy. *See Kleen*, 910 F.3d at 935-36. As this Court has recognized, "holdings regarding substantive law do not become irrelevant at the pleading stage, simply because they were made in later stages of a case." *Manufactured Homes*, 2025 WL 3485693, at *7 n.7; *see also Sunny Handicraft Ltd. v. Envision This!, LLC*, 2015 WL 231108, at *4 n.2 (N.D. Ill. Jan. 16, 2015) (prior decision's "thorough explication" of governing law not "alter[ed] or diminish[ed]" by its "procedural posture"). Contrary to Plaintiff's assertion, Defendants are not asking the Court to

apply the summary judgment standard applied in *Kleen*. Defendants ask only that the Court apply the governing *principle* outlined in *Kleen*—that the same conduct alleged in this case, in the same industry, could be explained by legal, interdependent conduct—to the motion to dismiss standard, *i.e.*, plausibility. Doing so exposes Plaintiff's alleged conspiracy as implausible.

*Second*, *Kleen* rejects the assumption on which Plaintiff's conspiracy theory relies: that "in a competitive market, . . . increased prices would drive customers to competitors." Compl. ¶ 74. In other words, Plaintiff assumes that a containerboard manufacturer has only one economically rational response to a competitor raising its prices—undercutting those prices. The Seventh Circuit, however, has explained that is not true: it is also economically rational to decide independently to raise prices. *See Kleen*, 910 F.3d at 935. This is because, as noted in Part II.C, the Containerboard industry has "a small number of manufacturers, vertical integration, inelastic demand, a standardized commodity product, and high barriers to entry." *Id.* Therefore, "[f]ollowing a competitor's price increases can be consistent with rational self-interest." *Id.* As such, Plaintiff's allegations of parallel pricing in the industry do not suggest a conspiracy, even without the presence of the market conditions pleaded here like increased input costs and demand.

*Finally*, Plaintiff's emphasis on the motion to dismiss having been denied in *Kleen* ignores the differences between the *Kleen* complaint and this one. As the *Kleen* motion-to-dismiss opinion makes clear, additional factors pleaded there—but not here—led the court to conclude that the complaint plausibly alleged a conspiracy:

- The *Kleen* court noted that the defendants' widespread capacity restrictions, made despite expected increases in demand, appeared to be against their self-interest. *See Kleen*, 775 F. Supp. 2d at 1078-79. Here, Plaintiff alleges the opposite—that capacity restrictions occurred during periods of *low* demand. *See supra* at 3-4, 6-7.

- The *Kleen* plaintiffs characterized the alleged price hikes as "unusual and unprecedented." *Kleen*, 775 F. Supp. 2d at 1079 n.14. Here, however, the alleged pricing practices followed

historical patterns in the containerboard industry, including the pricing patterns found lawful in *Kleen*. *See* Compl. ¶ 60 ("Traditionally, once one player moves, the rest follow.").

- The *Kleen* court found "most persuasive" the alleged "temporal proximity of price increases and capacity reductions to trade association and industry events." *Kleen*, 775 F. Supp. 2d at 1080 ("*all* Defendants repeatedly—twice in each of 2005 and 2006 and once in each of 2007 and 2008—raised their prices soon after an industry event" (emphasis added)). In contrast, this case does not feature successive price-increase announcements occurring close in time to industrywide meetings.[8] *See infra* at 12-13.

These differences are dispositive. The *Kleen* court acknowledged that what Plaintiff tries to allege here—parallel conduct (price increases and capacity restrictions)—amounts to, at most, conscious parallelism, and "[c]onscious parallelism alone is not enough for antitrust liability." *Kleen*, 775 F. Supp. 2d at 1078. In addition, two factors undermining the plausibility of conspiracy exist in this case but not in *Kleen*. First, COVID-19 (and the changes it caused in demand and input costs) was not an obvious alternative explanation for the challenged conduct in *Kleen*. Second, when the court ruled on the *Kleen* motion to dismiss, the Seventh Circuit had not held that parallel pricing in the containerboard industry is fully consistent with legal, interdependent conduct.

Plaintiff tries to argue that interdependence does not apply here because the alleged price-increase announcements that occurred on September 25, 2020 were simultaneous, not sequential. *See* Opp. 24. However, that argument directly contradicts the complaint, which says that "[o]n September 25, 2020, International Paper announced a $50 increase on linerboard and corrugating medium." Compl. ¶ 55. It then continues, "[t]he same day, PCA, Georgia-Pacific, Pratt, and Cascades announced an identical $50 increase." *Id.* Then, "[j]ust five days later, WestRock announced an identical increase." *Id.* In other words, Plaintiff itself identifies International Paper as the first mover, with others as followers. This follow-the-leader pricing behavior by interdependent firms does not support a plausible inference of collusion.

---

[8] Plaintiff often alleges that few Defendants attended industry meetings. *See, e.g.*, Compl. ¶¶ 77, 128.

## IV.    Plaintiff's Paint-By-Numbers Plus Factors Do Not Make Its Claim Plausible.

Nothing about Plaintiff's alleged "plus factors" changes this conclusion. As Defendants explained, plus factors must be "inconsistent with unilateral conduct" to raise a plausible inference that the alleged parallel conduct arose from agreement, rather than lawful interdependence. Mem. 21 (quoting *Hansen*, 2025 WL 2731378, at *8). That is a tall order where Plaintiff "alleged disparities in the timing and amount of" capacity changes and pricing announcements. *Manufactured Homes*, 2025 WL 3485693, at *8. Such disparities are "yet another strike against the complaint's plausibility." *Wash. Cnty.*, 328 F. Supp. 3d at 837. Thus, in a "holistic approach" to plausibility, the plus factors must bear more weight. *Manufactured Homes*, 2025 WL 3485693, at *13 (accounting for fact complaint "barely" pleaded parallel conduct); *Hansen*, 2025 WL 2731378, at *9 (similar). Here, Plaintiff's alleged plus factors might exist in any concentrated industry and thus "could just as easily reflect innocent conduct or rational self-interest." *Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*, 29 F.4th 337, 351 (7th Cir. 2022).

To start, Plaintiff argues that it would be "irrational" for Defendants to raise prices absent an agreement. Opp. 26-29. Not so; that behavior makes perfect sense in an interdependent market like the one alleged. *See supra* Part III.[9] It also makes sense for some manufacturers to adopt "value over volume" strategies, as three Defendants are alleged to have done here. *See Amory Invs. LLC v. Utrecht Am. Holdings, Inc.*, 74 F.4th 525, 527 (7th Cir. 2023); *In re Text Messaging Antitrust Litig.*, 782 F.3d 867, 877 (7th Cir. 2015). Regardless, Plaintiff's theory fails on its own terms because numerous Defendants never did so, which belies Plaintiff's suggestion that announcing

---

[9] Other cases involved industry-specific factors that made it difficult for one firm "to unilaterally lead the market in a price increase absent collusion," *In re Generic Pharms. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 448-49 (E.D. Pa. 2018) (drug pricing); *see also In re Disposable Contact Lens Antitrust*, 215 F. Supp. 3d 1272, 1297 (M.D. Fla. 2016) (contact lens pricing), or did not involve allegations of price fixing at all, *see In re Deere & Co. Repair Serv. Antitrust Litig.*, 703 F. Supp. 3d 862, 908 (N.D. Ill. 2023).

price increases or prioritizing value required unanimous agreement to be economically rational. Unable to refute this logic, Plaintiff argues that "Defendants matched each other's price increases" to support this plus factor. Opp. 28-29. That is an accusation at odds with the complaint and, besides, is one of parallel conduct—not a plus factor that provides the something "more" that is required to suggest a conspiracy. *Tires*, 767 F. Supp. 3d at 708 (allegations "that a firm should lower prices to increase market share" could not "serve as a plus factor").

Likewise insufficient are Plaintiff's attempts to infer conspiracy from the alleged structure of the containerboard industry itself. *Contra* Opp. 31-33. Even if the alleged market characteristics render collusion "feasible," they do not support an inference that collusion actually occurred. *Text Messaging*, 2009 WL 5066652, at *7. Indeed, these same characteristics create an incentive for containerboard manufacturers to engage in similar conduct in the absence of agreement. *See supra* Part III. It is perhaps unsurprising, therefore, that the Opposition ignores the case law establishing that market-structure allegations are "particularly unhelpful in concentrated industries, such as is alleged here." Mem. 24 (quoting *Tires*, 767 F. Supp. 3d at 718).

Plaintiff's reliance on trade associations (a fixture of nearly every industry) as a plus factor is particularly weak. Mere participation in "trade organization[s] does not, without more, support an inference of conspiracy" because it is expected absent conspiracy. *Text Messaging*, 2009 WL 5066652, at *7; *see also* Mem. 25-26. Moreover, "the broader context" of the meetings alleged here does not move the needle. *Cf. Turkey*, 642 F. Supp. 3d at 727.[10] Plaintiff attempts to tie just one trade association event to a pricing or production decision, arguing that the September 2020 price increase occurred soon after "Smurfit Kappa and WestRock" attended a conference in Asia.

---

[10] In *Turkey*, 642 F. Supp. 3d at 727, trade organizations allegedly attempted to forecast "future industry production" and "substitute 'co-opetition' for competition." Nothing similar is alleged here.

Opp. 30. No inference that Defendants coordinated prices at this meeting is plausible because Cascades, Georgia-Pacific, Greif, International Paper, PCA, and Pratt are not alleged to have attended it. *See* Mem. 26. Further, non-attendee International Paper led the increase, and attendee Smurfit Kappa never followed. *See* Compl. ¶ 55; Mem. tbls. 1-2. A lone trade association meeting involving just two Defendants in proximity to one price increase is a far cry from the facts alleged in cases crediting trade association meetings as a compelling plus factor. *Cf. Kleen*, 775 F. Supp. 2d at 1080 ("all Defendants repeatedly . . . raised their prices soon after an industry event"); *In re Loc. TV Advert. Antitrust Litig.*, 2020 WL 6557665, at *10 (N.D. Ill. Nov. 6, 2020) (similar).

Plaintiff also speculates that Defendants shared "non-public" information through trade associations. Opp. 29-30. But no specific facts about such exchanges or their relationship to price or output decisions are alleged here. *See* Compl. ¶¶ 129-33 (alleging only that trade association members receive access to "industry statistics," "market surveys," and other generic categories of information). Moreover, "mere participation in trade-organization meetings where information is exchanged and strategies are advocated does not suggest an illegal agreement," as gathering "information about pricing and competition in the industry is standard fare for trade associations." *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1196 (9th Cir. 2015); *see also In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 906-07 (6th Cir. 2009) (access to "information clearinghouse" did not support inference of collusion absent allegations that defendants obtained "commission reduction information *before* [they] implemented their rate reductions"); *Manufactured Homes*, 2025 WL 3485693, at *13 (similar).

All that remains is the alleged "history of antitrust violations." Opp. 33. Under Plaintiff's own cases, past misconduct must bear a "direct, logical relationship" to present allegations to serve as a plus factor. *Ross v. Am. Express Co.*, 35 F. Supp. 3d 407, 449 (S.D.N.Y. 2014); *see also In re*

*Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 903 (N.D. Cal. 2008) ("the same actors" called the shots). In the most recent lawsuit against containerboard manufacturers, however, the Seventh Circuit discerned "nothing" that "would permit a trier of fact to conclude that the defendants were colluding." *Kleen*, 910 F.3d at 935. Plaintiff's only examples of actual antitrust violations in the containerboard industry occurred at least 50 years ago and thus bear no relationship with this case.[11] *See* Compl. ¶¶ 114, 117.

## V.      The Opposition Confirms That Claims On Sales Before July 29, 2021 Are Untimely.

At minimum, the Court should dismiss claims arising from sales outside the four-year limitations period as untimely. *See* 15 U.S.C. § 15b; Mem. 28-30. Although Plaintiff suggests that it could not have discovered its claims sooner, *see* Opp. 38-39, the complaint's parallel-conduct allegations rest on material that has always been public. *See, e.g.*, Compl. ¶¶ 51-52 (Federal Reserve data); *id.* ¶ 54 (price-increase announcements); *id.* ¶ 70 (earnings call); *id.* ¶ 71 (annual report); *id.* ¶¶ 87-88 (securities filings). By the same token, all the supposed plus factors— including the containerboard industry's structure, Defendants' participation in trade associations, and prior antitrust litigation against containerboard manufacturers dating back "85 years," *id.* ¶ 112—have been present and publicly known for decades. Nothing changed between 2024 and 2025 that put Plaintiff on notice, and the Opposition does not even suggest otherwise.[12]

Nor does Plaintiff satisfy Rule 9(b)'s particularity requirement in pleading fraudulent concealment. Allegations "that Defendants and their co-conspirators" fixed prices since

---

[11] Plaintiff's suggestion that the *Linerboard* defendants "participated in a price-fixing cartel" between 1993 and 1995 is wholly unsupported. *Contra* Opp. 9. Those defendants settled without admitting liability. *See In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 635 (E.D. Pa. 2004). Settlement of a prior suit "does not permit an inference of collusion" later. *See Ross*, 35 F. Supp. 3d at 450.

[12] It is no answer to cite "the cumulative effect of" Defendants' conduct, *contra* Opp. 39, because the alleged price increases stopped during "a two-year lull" between 2022 and 2023, Compl. ¶ 59. Given that gulf, new activity *after* 2023 could not put Plaintiff on notice of coordinated activity *predating* 2022.

"November 1, 2020" at "industry meetings," Opp. 39, address "the conspiracy generally, but do not address concealment of the conspiracy," *Brown v. JBS USA Food Co.*, 773 F. Supp. 3d 1193, 1232 (D. Colo. 2025); *see also In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753, 773-74 (D. Minn. 2020) ("vague allegations" of "secret meetings" and "surreptitious communications" do not establish fraudulent concealment under Rule 9(b)). Beyond that, Plaintiff's suggestion that conspiracies are treated as "self-concealing" is incorrect. *Contra* Opp. 39. Under Seventh Circuit law, "some trick or contrivance separate from the underlying fraud" is required. *Appvion, Inc. Ret. Savings & Emp. Stock Ownership Plan ex rel. Lyon v. Buth*, 99 F.4th 928, 941 (7th Cir. 2024) (prior case law should not be read to "open[] the door to 'self-concealing frauds'"); *see also Pork*, 495 F. Supp. 3d at 773 ("only the Second Circuit has adopted the self-concealing doctrine").[13]

## VI.    Repleading Would Be Futile.

The Court should dismiss Plaintiff's claims with prejudice. *See* ECF No. 117, at 2; Mem. 30. Plaintiff seeks leave to amend, but its threadbare request offers no inkling of how it might state a plausible claim. *See* Opp. 40. Nor did Plaintiff submit a proposed amendment for the Court to evaluate. Leave to amend should accordingly be denied. *See, e.g.*, *James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 401 (7th Cir. 2006); *Right Field Rooftops, LLC v. Chi. Baseball Holdings, LLC*, 2016 WL 4549087, at *4 (N.D. Ill. Sept. 1, 2016).

## CONCLUSION

For the foregoing reasons, Plaintiff's complaint should be dismissed with prejudice.

---

[13] Further, Defendants never "instructed other conspirators not to divulge the existence of the conspiracy," "destroyed" records, or entered nondisclosure agreements to conceal misconduct, distinguishing *In re Copper Antitrust Litigation*, 436 F.3d 782, 791 (7th Cir. 2006). Meanwhile, *Fond Du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Co.*, 85 F. Supp. 3d 1007, 1011-12 (E.D. Wis. 2015), involved the application of fraudulent concealment under state law not relevant here.

Dated:  January 20, 2026

Respectfully submitted,

*/s/ Britt M. Miller*
Andrew S. Marovitz
Britt M. Miller
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600
amarovitz@mayerbrown.com
bmiller@mayerbrown.com
mprovance@mayerbrown.com

*Counsel for Defendant International Paper Company*

*/s/ Lauren Norris Donahue*
Michael E. Martínez
Lauren Norris Donahue
John Susoreny
Molly G. Baldock
K&L GATES LLP
70 W. Madison St., Ste. 3300
Chicago, Illinois 60602
Tel: (312) 372-1121
michael.martinez@klgates.com
lauren.donahue@klgates.com
john.susoreny@klgates.com
molly.baldock@klgates.com

Derek A. Sutton (*pro hac vice*)
K&L GATES LLP
301 Hillsborough St., Ste. 1200
Raleigh, North Carolina 27603
Tel: (919) 743-7331
derek.sutton@klgates.com

*Counsel for Defendants Cascades Inc.; Cascades USA Inc.; and Cascades Holding US, Inc.*

*/s/ Daniel E. Laytin, P.C.*
Daniel E. Laytin, P.C.
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Tel: (312) 862-2000
Fax: (312) 862-2200
dlaytin@kirkland.com

Catie Ventura
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave. NW
Washington, D.C. 20004
Tel: (202) 389-5000
catie.ventura@kirkland.com

*Counsel for Defendant Packaging Corporation of America*

*/s/ Nicholas E.O. Gaglio*
Nicholas E.O. Gaglio (*pro hac vice*)
Kail Jethmalani (#5352307)
AXINN, VELTROP & HARKRIDER LLP
630 5th Avenue
New York, NY 10111
Tel: (212) 728-2200
ngaglio@axinn.com
kjethmalani@axinn.com

*Counsel for Defendant Greif, Inc.*

*/s/ Zachary Fardon*
Zachary Fardon
Tatum Ellis
KING & SPALDING LLP
110 N. Wacker Dr., Ste. 3800
Chicago, IL 60606
Tel: (312) 995-6333
zfardon@kslaw.com
tellis@kslaw.com

/s/ Michael D. Bonanno
Michael D. Bonanno, Esq.
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
Tel: (202) 538-8000
Fax: (202) 538-8100
mikebonanno@quinnemanuel.com

Michelle Schmit
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: (312) 705-7400
Fax: (312) 705-7401
michelleschmit@quinnemanuel.com

*Counsel for Defendant Georgia-Pacific LLC*

/s/ William B. Michael
William B. Michael (*pro hac vice*)
Geoffrey R. Chepiga (*pro hac vice*)
Brette Tannenbaum (*pro hac vice*)
Justin D. Lerer (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
Fax: (212) 757-3990
wmichael@paulweiss.com
gchepiga@paulweiss.com
btannenbaum@paulweiss.com
jlerer@paulweiss.com
*Counsel for Defendant Pratt Industries, Inc.*

Jeffrey S. Cashdan
Lohr Beck
KING & SPALDING LLP
1180 Peachtree St. NE, Ste. 1600
Atlanta, GA 30309
Tel: (404) 572-4600
jcashdan@kslaw.com
lohr.beck@kslaw.com

Chris Yook
KING & SPALDING LLP
1700 Pennsylvania Avenue NW, Ste 900
Washington, DC 20006
Tel: (202) 626-3747
cyook@kslaw.com

*Counsel for Defendants Smurfit Kappa North
America LLC and WestRock CP, LLC*

## CERTIFICATE OF SERVICE

I, Britt M. Miller, an attorney, hereby certify that on January 20, 2026, I caused a true and correct copy of the foregoing document to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system.

/s/ *Britt M. Miller*
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com